Philip A. Goldstein (Bar Number 514834)
Attorney for Respondent
McGuireWoods LLP
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105
T: (212) 548-2100
F: (212) 548-2150
E-Mail: pagoldstein@mcguirewoods.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ETRANSMEDIA TECHNOLOGY, INC., ) | <u>ECF Case</u> |
| ) | |
| ) | **Case No. 1:11-cv-1042 (DNH/DRH)** |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **NEPHROLOGY ASSOCIATES, P.C.,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**NEPHROLOGY ASSOCIATES, P.C.'S MEMORANDUM IN OPPOSITION TO**
<u>**ETRANSMEDIA TECHNOLOGY, INC.'S PETITION TO COMPEL ARBITRATION**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 3

    A.    The Billing Agreement .................................................................. 3

    B.    The Services Agreement ................................................................ 5

    C.    Etransmedia's Breaches of the Billing Agreement ............................... 6

    D.    The Initial Notice of Breach of the Billing Agreement and the Services Agreement ..................................................................................... 6

    E.    Etransmedia's Attempt to "Duck Service" of the July 2010 Notice ...................... 6

    F.    Etransmedia's Continuing and Substantial Breaches of the Billing Agreement ..................................................................................... 7

    G.    The Notice of Breach of the Billing Agreement ................................... 8

    H.    Etransmedia's Repeated Attempts to "Duck Service" of the June 2011 Notice ......................................................................................... 8

    I.    Etransmedia Ceases Its Performance Under the Billing Agreement ................ 8

    J.    The Complaint .............................................................................. 9

    K.    Etransmedia's Notice of Removal ................................................... 10

    L.    Etransmedia's Petition and Motion to Dismiss ................................... 10

    M.    NAPC's Motion to Remand ........................................................... 10

    N.    Etransmedia Did Not Request Arbitration Prior to Filing Its Petition to Compel ...................................................................................... 11

ARGUMENTS ................................................................................................. 11

I.    ETRANSMEDIA'S PETITION CONSTITUTES IMPERMISSIBLE FORUM SHOPPING ............................................................................................ 11

    A.    Etransmedia Did Not Request Arbitration Prior to Filing Its Petition ................ 11

    B.    Etransmedia's Petition Will be Mooted by the Georgia Court and Creates the Risk of Inconsistent Verdicts ..................................................... 12

II.    ARBITRATION IS INAPPROPRIATE BECAUSE THE PARTIES DID NOT AGREE TO ARBITRATE DISPUTES ARISING OUT OF THE BILLING AGREEMENT .......................................................................................... 14

    A.    NAPC's Claims Are Not Arbitrable Because They Arise Solely Under The Billing Agreement ....................................................................... 16

# TABLE OF CONTENTS
(continued)

Page

III.   THE SERVICES AGREEMENT'S ARBITRATION PROVISION DOES NOT
       PROVIDE A BASIS FOR COMPELLING ARBITRATION BECAUSE THE
       CLAIMS IN NAPC'S COMPLAINT ONLY IMPLICATE OBLIGATIONS
       UNDER THE BILLING AGREEMENT ................................................................... 18

       A.   A Review of the Allegations in the Complaint Demonstrates that NAPC's
            Claims Do Not Relate to or Touch Upon the Services Agreement .................... 19

       B.   Etransmedia's Arguments Amount to Defenses that Actually Relate to the
            Billing Agreement ............................................................................................ 20

CONCLUSION ............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*131 Heartland Blvd. Corp. v C.J. Jon Corp.*,
    82 A.D.3d 1188 (N.Y. App. Div. 2011) ..................................................................17

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
    98 N.Y.2d 144, 773 N.E.2d 496 (N.Y. 2002) ........................................................22

*Atlas Elevator Corp. v. United Elevator Group, Inc.*,
    77 A.D.3d 859, 910 N.Y.S. 2d 476 (N.Y. App. Div. 2010) ...................................22

*Chimart Assoc. v Paul*,
    66 N.Y.2d 570 (N.Y. 1986) ...................................................................................16

*DaPuzzo v. Globalvest Mgmnt. Co., L.P.*,
    263 F. Supp. 2d 714 (S.D.N.Y. 2003)....................................................................12

*DT Corp. v. Tyco Group, S.A.R.L.*,
    13 N.Y.3d 209 (N.Y. 2009) ...................................................................................17

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002)................................................................................................16

*Forbes v. Cendant Corp.*,
    No. 99-9180, 2000 U.S. App. LEXIS 1253 (2d Cir. January 28, 2000).................14

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)..................................................................................................14

*Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Investments,*
    *Inc.*,
    533 F.3d 1342 (11th Cir. 2004) ........................................................................18, 19

*Kelso Enters. v. M/V Diadema*,
    375 Fed. Appx. 48 (2d Cir. 2010)...........................................................................15

*Lewis v. New Jersey Sports Productions, Inc.*,
    No. 02 Civ. 6505, 2003 US Dist. Lexis 3483 (S.D.N.Y. March 12, 2003) .............18

*Mann v. N.A.S.A. International, Inc.*,
    No. 99 Civ. 11936, 2000 U.S. Dist. LEXIS 11922 (S.D.N.Y. August 21, 2000)....18

*Moyers v. Brown*,
    No. 89 Civ 49351990, U.S. Dist. LEXIS 5230 (S.D.N.Y. May 7, 1990)................13

*New York v. Oneida Indian Nation of New York,*
 90 F.3d 58 (2d Cir. 1996)...................................................................................................15, 16

*Provident Bank v. Kabas,*
 141 F. Supp. 2d 310 (E.D.N.Y. 2001) .......................................................................................12

*Sea Spray Holdings, LTD. v. Pali Financial Group, Inc.,*
 269 F. Supp. 2d 356 (S.D.N.Y. 2003).......................................................................................12

*Specht v. Netscape Commc'ns. Corp.,*
 306 F.3d 17 (2d Cir. 2002).........................................................................................................16

*Syed v. Normel Construction Corp.,*
 4 A.D.3d 303 (N.Y. App. Div. 2004) .........................................................................................15

*UBS Securities, LLC v. Voegeli,*
 405 Fed. Appx. 550(2d Cir. 2011)..............................................................................................14

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,*
 489 U.S. 468 (1989)....................................................................................................................14

**STATUTES**

Federal Arbitration Act ("FAA")..............................................................................11, 14, 16, 17

Respondent Nephrology Associates, P.C. ("NAPC"), by and through its undersigned attorneys, McGuireWoods LLP, hereby submits this Memorandum in Opposition to Etransmedia Technology, Inc.'s ("Etransmedia") Petition to Compel Arbitration (the "Petition").

**PRELIMINARY STATEMENT**

This matter is before this Court as part of Etransmedia's continuing efforts to forum shop and delay resolution for its breaches of an agreement, the Agreement for Billing and Claims Processing Services and Business Associate Agreement (the "Billing Agreement"). The Billing Agreement required Etransmedia to provide NAPC certain billing and claims processing services in exchange for a commission on the amounts that were collected. NAPC brought suit against Etransmedia for breach of the Billing Agreement in the Superior Court of Richmond County, Georgia on July 7, 2011. The Billing Agreement does not include an arbitration provision. The dispute between the parties centers entirely and exclusively on the Billing Agreement and Etransmedia's numerous and repeated breaches of the Billing Agreement.

After being served with the Complaint and Summons on July 11, 2011, Etransmedia first sought to delay resolution of this claim by filing an untimely Notice of Removal to the United States District Court for the Southern District of Georgia on August 11, 2011. Etransmedia then continued its attempts to forum shop and to avoid confronting the merits of the allegations against it by filing its Petition in this Court. Neither Etransmedia nor its counsel made any request or demand for arbitration prior to filing its Petition. At the same time it submitted the issue of arbitrability in this Court, Etransmedia also filed a Motion to Dismiss, or in the Alternative to Transfer Venue or Stay Proceedings ("Motion to Dismiss") in the Georgia action as it argued that the dispute should proceed in arbitration. Etransmedia's Motion to Dismiss was the proper method for it to assert its arguments that this dispute is arbitrable.

At no point in time has Etransmedia brought or alleged any claims against NAPC. Moreover, it does not dispute that the Billing Agreement does not contain any arbitration provision or provide any basis for compelling arbitration. Rather, Etransmedia relies wholly upon an entirely separate agreement, the Services Agreement, to support its Petition. The Services Agreement was an agreement under which NAPC licensed software from Etransmedia. Both agreements are fully integrated and neither the Billing Agreement nor the Services Agreement references the other. Nonetheless, Etransmedia focuses on the arbitration provision in the Services Agreement and suggests that several of its defenses to NAPC's claims will relate to the Services Agreement. Etransmedia's arguments cannot withstand scrutiny.

As an initial matter, a review of NAPC's allegations and claims in its Complaint plainly demonstrates that all of NAPC's claims are based upon the Billing Agreement. NAPC is suing Etransmedia for breach of the Billing Agreement and asks that the Billing Agreement be declared terminated. No claims are brought under the Services Agreement. In fact, NAPC wanted Etransmedia to continue to perform its obligations under the Services Agreement and specifically stated in its June 2011 Notice that the Services Agreement was not being terminated. Moreover, Etransmedia's arguments that its defenses to NAPC's claims will touch upon the Services Agreement are illusory, as its defenses actually relate entirely to NAPC's obligations under the Billing Agreement and require an analysis of only the Billing Agreement. There is no factual support for Etransmedia's Petition, as NAPC's claims against Etransmedia relate entirely to the Billing Agreement.

In order to support its attenuated and legally unsupported Petition, Etransmedia provides extensive citation to generic tenets of the Second Circuit's law regarding the enforcement of arbitration provisions. NAPC does not dispute that the Second Circuit recognizes and enforces

arbitration provisions where appropriate.  However, the existing dispute between NAPC and Etransmedia arises out of an agreement that does not contain or reference an arbitration provision.  Here, Etransmedia is forum shopping and has brought the Petition despite the existence of pending litigation in another Federal Court[1] in which it has raised these exact same issues of arbitrability.

In this case, there is no agreement to arbitrate.  In fact, the parties manifested a very specific intent **not** to arbitrate issues and disputes relating to the Billing Agreement by deliberately choosing not to include an arbitration provision in the Billing Agreement.  The claims at issue pertain entirely to the Billing Agreement and require only an analysis of the Billing Agreement.  Accordingly, this Court should deny Etransmedia's Petition in its entirety and with prejudice.

## FACTUAL BACKGROUND

*A.*    *The Billing Agreement*

NAPC and Etransmedia entered into the Billing Agreement on or around December 29, 2009, and the Billing Agreement required Etransmedia to provide billing and claims processing services to NAPC in exchange for a percentage of the monies that were collected.  *See* the Affirmation of Phil Goldstein ("Goldstein Aff."), Ex. B.  Pursuant to the terms of the Billing Agreement, Etransmedia had specific responsibilities, which included the following:

A.    [Etransmedia will] [s]ubmit claims to third party carriers as
mutually agreed upon by Client and Etransmedia. Statements will be

---

[1] NAPC has a pending Motion to Remand in the Georgia litigation and the federal court in Georgia has stayed Etransmedia's Motion to Dismiss while it decides whether to remand the action.  Regardless of whether the Georgia action stays in federal court or is remanded to state court, that forum will address the question of arbitrability.  It is not appropriate for Etransmedia to petition this Court for an order compelling arbitration where there is already pending litigation elsewhere in which Etransmedia has requested a dismissal based upon the very same arguments that it raises here.

sent to patients on a monthly basis up to a maximum of three
statements per patient balance above $10.

B.   Etransmedia will perform billing services on Allscripts Professional
Practice Management system owned by the Client.

C.   [Etransmedia will] [p]rovide to Client a monthly Aging report for
charges billed through Etransmedia.  In addition, Client may choose
two additional reports to be sent monthly as part of this contract.

D.   Claims are submitted with the Client's address listed as the
remittance address.

E.   As requested by the client, initial batch of patient statements will be
sent out immediately [by Etransmedia] once the patient accounts are
updated with insurance payment receipts. After the initial batch of
patient statements, subsequent patient statements will be mailed out
on a weekly basis with a maximum of 28 days gap between patient
statements to any patient.

*See id.* at p. 3, § 2.1.  The Billing Agreement also set forth specific obligations for NAPC, which

included, *inter alia*, the following:

A.   Daily Charge Slips, Remittances, Patient Information Forms, and
miscellaneous correspondence will be completed and forwarded to
Etransmedia by the end of business of the day services rendered.
Diagnosis and Procedure codes will be specified by Client in writing
or using the integrated EMR system.

B.   Client agrees that to the best of their knowledge all information
furnished to Etransmedia is complete and correct.  In addition,
Client agrees to contact Etransmedia in writing the day any
payments, disputes, settlements or other claims regarding patients in
collections are received.

      *              *              *

D.   Client agrees to accept full responsibility for all information
provided by Client to Etransmedia.  Client agrees to hold
Etransmedia harmless in the event any errors occur due to
inaccurate, incomplete or false information supplied by Client to
Etransmedia.

*Id.*

4

The Billing Agreement was drafted by Etransmedia. *See* the Affidavit of Don Williamson ("Williamson Aff.") at ¶ 19. The Billing Agreement is fully integrated with a merger clause and does not make any reference to the Services Agreement. *See* Goldstein Aff., Ex. B. The Billing Agreement does not include any arbitration provision and also does not include a forum selection provision. *See id.* Pursuant to the Billing Agreement, any notice was to be sent via United States Postal Service certified mail. *Id.* at § 5.7.

**B.**     ***The Services Agreement***

The Services Agreement was a separate agreement that was entered into by NAPC and Etransmedia on or about December 23, 2009. *See* Goldstein Aff., Ex. C. Specifically, paragraph 2 of the Services Agreement provides that Etransmedia granted to NAPC "a nonexclusive and nontransferable license" to use its software. *Id.* at § 2. The Services Agreement was a software licensing agreement that granted NAPC the right to use certain software. Etransmedia is defined as the "Licensor" under the Services Agreement. *See* Goldstein Aff., Ex. C. The Services Agreement was entirely separate from the Billing Agreement, features distinct consideration, is fully integrated with a merger clause and does not so much as reference the Billing Agreement. *Id.* Moreover, the parties' duties and obligations under the Services Agreement are related only to the use of the software, not to billing and claims processing services. *Id.* For instance, NAPC's obligations under the Services Agreement included "tak[ing] all reasonable steps to ensure that no virus is loaded on the System," "adhering to specified electrical requirements, "tak[ing] reasonable steps to ensure the security of access to the System and [NAPC's] network," and "using the Software in accordance with the documentation provided" with such software. *Id.* at § 11(a)-(i). In contrast, the Services Agreement never mentions either parties' duties and obligations with respect to billing and claims processing.

5

### C.   Etransmedia's Breaches of the Billing Agreement

Throughout the term of the Billing Agreement, Etransmedia's performance was unsatisfactory. NAPC had substantial difficulty communicating with Etransmedia and found that Etransmedia was breaching the Billing Agreement in numerous ways. Etransmedia's breaches included providing an inadequate number of billing personnel who were insufficiently trained, improperly entering billing codes, negatively affecting NAPC's collections, and providing unsatisfactory responses to issues that NAPC identified. Goldstein Aff., Ex. A at ¶ 23. These breaches of the Billing Agreement coincided with Etransmedia's failure to deliver appropriate software pursuant to the Services Agreement, which forced NAPC's then-administrator, Wanda Schronce, and other NAPC employees to raise multiple issues with Etransmedia. (Williamson Aff. at ¶ 23).

### D.   The Initial Notice of Breach of the Billing Agreement and the Services Agreement

On July 27, 2010, as a result of Etransmedia's breaches of the Agreements, NAPC's counsel sent a Notice of Breach of the Billing Agreement and the Services Agreement to Etransmedia (the "July 2010 Notice"). See Goldstein Aff., Ex. A at Ex. B. The July 2010 Notice was sent by Certified Mail and informed Etransmedia of its breaches of the Agreements. Id.

### E.   Etransmedia's Attempt to "Duck Service" of the July 2010 Notice

The July 2010 Notice was sent to Etransmedia's President and CEO, Vikram Agrawal, and was also sent to Etransmedia's Vice President Operations, Avin Joshi. Both Messrs. Agrawal and Joshi continued Etransmedia's improper conduct by refusing to accept delivery of the July 2010 Notice. Etransmedia's refusal to accept delivery of the July 2010 Notice was consistent with its refusal to remedy its breaches of the Billing Agreement and forced NAPC's counsel to resend the July 2010 Notice via Federal Express and Email. The July 2010 Notice was successfully delivered by these means. See Goldstein Aff., Ex. A at Ex. C.

Etransmedia's refusal to accept the July 2010 Notice also prompted NAPC to contact Allscripts, the manufacture of the software that was underlying the Services Agreement, to request its intervention.  Williamson Aff. at ¶ 31.  NAPC has maintained a dialogue with Allscripts since 2010 and Allscripts is attempting to remedy NAPC's concerns relating to the Services Agreement.  *Id.*  Additionally, after receiving the July 2010 Notice, Etransmedia's employees finally reached out to NAPC's employees purportedly to work towards remedying Etransmedia's breaches.  Accordingly, NAPC did not terminate either of the Agreements as a result of the July 2010 Notice.

**F.**     ***Etransmedia's Continuing and Substantial Breaches of the Billing Agreement***

While NAPC continued to work with Allscripts towards a solution for the issues relating to the Services Agreement, Etransmedia's performance under the Billing Agreement deteriorated.  Etransmedia continued its earlier breaches of the Billing Agreement and also began to breach the Billing Agreement in additional ways, which caused NAPC financial harm and created regulatory concerns.  Etransmedia's breaches of the Billing Agreement, included but were not limited to: improper billing with regards to Medicaid patients, including balance billing; not properly coding and billing Medicare claims; not providing copies of the Monthly Aging Reports that are required under Section 2.1(c) of the Billing Agreement; not properly mailing patient statements as was required under Section 2.1(e) of the Billing Agreement; not providing an adequate number or sufficiently trained billing personnel; not exercising its best collections efforts and thereby causing NAPC to suffer a dramatic decrease in collections; not diligently recording payments; not properly responding to denials; and submitting bills to incorrect payors. Goldstein Aff., Ex. A at ¶ 34.

**G.      *The Notice of Breach of the Billing Agreement***

As a result of Etransmedia's continuing and exacerbated breaches of the Billing

Agreement, NAPC decided that it was necessary to send a separate notice relating solely to the

Billing Agreement.  Accordingly, on June 7, 2011, NAPC's counsel sent a Notice of Breach of

the Billing Agreement to Etransmedia (the "June 2011 Notice").  *See* Goldstein Aff., Ex. A at

Ex. E.  The June 2011 Notice was sent to Vikram Agrawal and Avin Joshi via both Certified

Mail and Federal Express and it set forth in detail Etransmedia's myriad breaches of the Billing

Agreement.  The June 2011 Notice explained that NAPC would terminate the Billing

Agreement if Etransmedia did not timely remedy its breaches.

The June 2011 Notice pertained solely to the Billing Agreement.  It did not identify any

breaches of the Services Agreement.  In fact, the June 2011 Notice explicitly stated that the

Services Agreement was not being terminated.  *See* Goldstein Aff., Ex. A at Ex. E, p. 3.

Etransmedia did not provide any substantive response to the June 2011 Notice.

**H.      *Etransmedia's Repeated Attempts to "Duck Service" of the June 2011 Notice***

Etransmedia's President and CEO, Vikram Agrawal, and its Vice President Operations,

Avin Joshi, refused to accept the delivery of the June 2011 Notice.  *See* Goldstein Aff., Ex. A at

Ex. F.  As noted above, this was not the first occasion in which Messrs. Agrawal and Joshi had

improperly refused to accept the valid delivery of a notice that was being sent relating to the

Billing Agreement.  However, the June 2011 Notice was successfully delivered via Federal

Express.

**I.      *Etransmedia Ceases Its Performance Under the Billing Agreement***

On June 24, 2011, Mozelle Stevens, an Etransmedia employee, contacted Barton Brezina,

M.D. ("Dr. Brezina"), a physician-owner of NAPC.  *See* Affidavit of Barton Brezina ("Brezina

Aff.") at ¶ 28.  Dr. Brezina informed Ms. Stevens that the June 2011 Notice had been sent and

that NAPC lacked trust in Etransmedia as a result of its conduct. *Id.* During the conversation, Dr. Brezina did not make any statement that Etransmedia should cease its performance under the Billing Agreement entirely. *Id.* at ¶ 31.

On June 27, 2011, an NAPC employee, Cindy Hardigree, sent an email to an Etransmedia employee, Jody Childrose, requesting assistance with a patient account. *See Id.* at ¶ 33. Ms. Childrose responded by stating that she "would love to help you out, but per Mozelle on Friday she had a conversation with Dr Brezina---that we are to stop further action on your account. Process claims, post payments, phone calls, statements, emails etc,…. If this is incorrect, please advise me." *Id.* at ¶ 34. As a result of Ms. Childrose's email, on that very day, Dr. Brezina sent an email to Ms. Childrose and Ms. Stevens stating that he had not instructed Etransmedia to stop working on NAPC's accounts and noting that Etransmedia was required to continue working on NAPC's accounts. *Id.* at ¶ 36. Despite receiving Dr. Brezina's email, and without any explanation, Etransmedia ceased all performance of its obligations under the Billing Agreement.

## J.   *The Complaint*

As a result of Etransmedia's myriad breaches of the Billing Agreement and its unilateral and baseless decision to cease all performance on NAPC's accounts, NAPC was forced to file a Complaint in the Superior Court for Richmond County, Georgia. That Complaint was filed on July 7, 2011 and alleged causes of action against Etransmedia for breach of the Billing Agreement and for a declaration that the Billing Agreement was properly terminated. Each of NAPC's claims relates entirely to the Billing Agreement and seeks relief that pertains exclusively to the Billing Agreement and to Etransmedia's breaches of the Billing Agreement.

The Complaint does not include any claims that are based upon or related to the Services Agreement. The Complaint references the Services Agreement strictly by way of background and to add context to the discussion of the July 2010 Notice, which related to both the Billing

Agreement and the Services Agreement.  Conversely, the June 2011 Notice and the Complaint

both relate exclusively to Etransmedia's breaches of the Billing Agreement.  The Complaint was

served on July 11, 2011.

**K.      Etransmedia's Notice of Removal**

On August 11, 2011 – 31 days after being served with the Complaint and Summons –

Etransmedia took its first step to alter the forum of the litigation by filing a Notice of Removal

and thereby removing NAPC's Complaint from the Superior Court of Richmond County,

Georgia to the United States District Court for the Southern District of Georgia.

**L.      Etransmedia's Petition and Motion to Dismiss**

On August 31, 2011, without providing any prior notice to NAPC and while the

underlying litigation involving NAPC's Complaint was pending in the United States District

Court for the Southern District of Georgia, Etransmedia filed the Petition in this Court.  The very

next day, September 1, 2011, Etransmedia filed its Motion to Dismiss, or in the Alternative to

Transfer Venue or Stay Proceedings in the Georgia action.  Etransmedia's Motion to Dismiss

sought an order from the Georgia court finding that NAPC's claims were subject to arbitration,

which is precisely the nature of the order that Etransmedia is seeking from this Court.

**M.      NAPC's Motion to Remand**

On September 9, 2011, NAPC filed a Motion to Remand to the Superior Court of

Richmond County, Georgia because Etransmedia's Notice of Removal was untimely and

improper.  Briefing on the Motion to Remand is continuing.  NAPC also filed a Motion to Stay

Briefing on Etransmedia's Motion to Dismiss pending a decision on the Motion to Remand and

the Georgia federal court has granted that motion and stayed the briefing on the Motion to

Dismiss.

*N.*     ***Etransmedia Did Not Request Arbitration Prior to Filing Its Petition to Compel***

Prior to filing its Petition, no Etransmedia employee contacted an NAPC employee to request that NAPC agree to arbitrate its claims against Etransmedia. Williamson Aff. at ¶¶ 44-46; Brezina Aff. at ¶¶ 41-43. Moreover, Etransmedia's counsel did not request that NAPC agree to arbitrate its claims until after it filed its Petition in this Court. (*See* Lash Decl. at Exs. A and B).

## ARGUMENTS

## I.     ETRANSMEDIA'S PETITION CONSTITUTES IMPERMISSIBLE FORUM SHOPPING

A review of the Complaint in the Georgia litigation and of the arguments set forth below, unequivocally demonstrates that NAPC's claims against Etransmedia are not arbitrable. Moreover, Etransmedia's Petition was also improperly brought in this Court and constitutes impermissible forum shopping.

### A.     Etransmedia Did Not Request Arbitration Prior to Filing Its Petition

In its Petition, Etransmedia asserts that NAPC has refused its offers to arbitrate NAPC's claims against Etransmedia. However, a review of the very evidence that Etransmedia submitted demonstrates that its argument is illusory. Etransmedia filed its Petition on August 31, 2011 and its Motion to Dismiss the Georgia litigation on September 1, 2011. Etransmedia did not request or demand arbitration prior to creating a new action through the filing of its Petition in this Court and prior to filing a Motion to Dismiss in the Georgia litigation.[2]

In fact, the Declaration of Etransmedia's attorney, Robert Lash, demonstrates that Etransmedia did not timely request arbitration. For example, Mr. Lash states that "[u]pon

---

[2] Moreover, Etransmedia did not comply with or properly bring this action pursuant to Section 4 of the FAA because Etransmedia did not provide any notice in writing prior to filing its Petition. Thus, Etransmedia failed to provide the requisite five days' notice in writing as is necessary under Section 4 of the FAA.

commencing this proceeding, I contacted NAPC's counsel requesting that they agree to accept service of process of the Petition **and that NAPC arbitrate the matters alleged in the Georgia action.** NAPC's counsel agreed to accept service of process, but did not agree to arbitrate." (Lash Decl. at ¶ 6). A review of Mr. Lash's email, which was attached to his Declaration, demonstrates that he did not request NAPC's agreement to arbitrate. *See* Lash Decl. at Ex. A. Rather, Mr. Lash informed NAPC's counsel of the Petition and then asked "[w]ill you accept service of these documents on behalf of Nephrology Associates?" *Id.* Moreover, Mr. Lash's Declaration also asserts that "[s]ubsequently, another attorney in our Firm contacted NAPC's counsel to again request that NAPC agree to arbitrate the claims made in the Georgia action." Lash Decl. at ¶ 7. Despite his inclusion of the word "again", Mr. Lash is referencing Etransmedia's first request that NAPC agree to arbitrate, which arose in the September 6, 2011 email of his colleague, James Smyton. *Id.* at Ex. B. Mr. Smyton's email was sent six days after the Petition was filed. Accordingly, a review of the very documents that were submitted by Etransmedia in support of its Petition demonstrates that Etransmedia failed to make any timely request for arbitration and, instead, made such a request after it had already proceeded with its forum shopping through the filing of its Petition.

**B.     Etransmedia's Petition Will be Mooted by the Georgia Court and Creates the Risk of Inconsistent Verdicts**

Etransmedia filed its Petition in this Court despite the existence of pending litigation in Georgia. The Georgia court clearly has the power to decide whether this dispute is arbitrable. *See DaPuzzo v. Globalvest Mgmnt. Co., L.P.,* 263 F. Supp. 2d 714, 739 (S.D.N.Y. 2003); *Sea Spray Holdings, LTD. v. Pali Financial Group, Inc.,* 269 F. Supp. 2d 356, 363-65 (S.D.N.Y. 2003); *Provident Bank v. Kabas,* 141 F. Supp. 2d 310, 315 (E.D.N.Y. 2001). In fact, Etransmedia has submitted, via its Motion to Dismiss the action in the Georgia court, the very

12

issue of whether this dispute is arbitrable. The Georgia court's ruling on this issue will render the Petition moot. A ruling on the Motion to Dismiss in the first-filed Georgia action will necessarily require the Georgia court to determine whether NAPC's claims are arbitrable. If the Georgia court determines that NAPC's claims are arbitrable, NAPC will be forced to either bring its claims against Etransmedia in arbitration or relinquish its claims. Accordingly, the first-filed and currently pending Georgia action provided Etransmedia with the proper means to seek arbitration.

Etransmedia has created the risk of inconsistent rulings by bringing the Petition in New York when this matter is also before the Georgia court. Etransmedia has not brought any claims against NAPC. Rather, all of the claims that are at issue have been brought by NAPC against Etransmedia under the Billing Agreement. Accordingly, Etransmedia would not have suffered any harm by waiting for the Georgia court to rule on the arbitrability of NAPC's claims. Moreover, permitting the Georgia court to rule on the Motion to Dismiss would have resolved these issues without requiring the expenditure of fees and resources by the parties while also conserving judicial resources by not involving this Court unnecessarily. Additionally, had Etransmedia properly waited for a determination on its Motion to Dismiss, there would not be any risk of inconsistent verdicts.

Instead, in an attempt to forum shop and delay this litigation, Etransmedia filed its Petition in this Court at great and unnecessary expense to this Court and to the parties. It is well established that forum shopping is not appropriate. *Moyers v. Brown*, No. 89 Civ 49351990, U.S. Dist. LEXIS 5230, at *7 (S.D.N.Y. May 7, 1990) (stating that "equity discourages forum shopping" and denying defendant's motion to transfer). The Petition raises an issue that is already before the Georgia court and any ruling by this Court will infringe upon the jurisdiction

of the Georgia court and create a risk of inconsistent verdicts. Accordingly, Etransmedia should have raised its arguments regarding arbitration solely before the Georgia court. Therefore, because Etransmedia is improperly forum shopping and seeking a ruling from this Court on issues that are already properly before another court, its Petition should be denied in its entirety and with prejudice or, at a minimum, and in the alternative, this court should stay ruling on this Petition until the Georgia court rules on the issue of arbitrability.

## II.   ARBITRATION IS INAPPROPRIATE BECAUSE THE PARTIES DID NOT AGREE TO ARBITRATE DISPUTES ARISING OUT OF THE BILLING AGREEMENT

In its Petition, Etransmedia argues that arbitration should be compelled under Section 4 of the Federal Arbitration Act ("FAA") because of the federal policy in favor of arbitration. Etransmedia ignores the United States Supreme Court's binding precedent that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Arbitration is a matter of contract and a court may not compel arbitration where the parties have not agreed to arbitrate. *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("the FAA does not require parties to arbitrate when they have not agreed to do so"); *see also UBS Securities, LLC v. Voegeli*, 405 Fed. Appx. 550, 551(2d Cir. 2011) (quoting *Howsam,* 537 U.S. at 83). The FAA sets forth a framework for compelling arbitration in appropriate circumstances, but it is constrained to such appropriate circumstances. Thus, the Second Circuit has recognized that "[d]espite the strong federal policy favoring arbitration, we do not require parties to arbitrate when they have not agreed to do so." *Forbes v. Cendant Corp.*, No. 99-9180, 2000 U.S. App. LEXIS 1253, at *4 (2d Cir. January 28, 2000).

In this case, there can be no legitimate dispute that NAPC and Etransmedia did not agree to arbitrate any disputes that arise under the Billing Agreement. Accordingly, NAPC cannot be

14

compelled to arbitrate its claims against Etransmedia, which arise entirely under the Billing Agreement. In drafting the Billing Agreement, the parties manifested their clear intent not to arbitrate disputes arising under the Billing Agreement by choosing not to include an arbitration provision. The parties' decision to not include an arbitration provision in the Billing Agreement was clearly intentional, as the separate Services Agreement that was entered into by the same parties did include an arbitration provision. Both agreements are fully integrated and do not reference the other. Thus, the parties clearly were capable of including an arbitration provision in an agreement when they deemed it desirable to do so.[3]

In support of its argument that NAPC's claims are arbitrable, Etransmedia merely recites general principles of law regarding arbitration, which stand for the proposition that when an arbitration provision is broad, there is a presumption of arbitrability. (Petition at pp. 10-14). However, these general provisions of law are of no consequence here because NAPC's claims arise exclusively out of the Billing Agreement, which does not contain an arbitration provision. In fact, it is also well established that a presumption of arbitrability is "overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." *Kelso Enters. v. M/V Diadema*, 375 Fed. Appx. 48, 50 (2d Cir. 2010); *see also New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 59 (2d Cir. 1996) (holding that

---

[3] The Billing Agreement is unambiguous and plainly does not require or provide any basis for the parties to arbitrate any disputes arising under the Billing Agreement. Accordingly, the arbitration of disputes arising under the Billing Agreement is plainly inappropriate. In fact, Etransmedia drafted both the Billing Agreement and the Services Agreement. (Williamson Aff. at ¶ 19). Thus, it was Etransmedia that made the initial decision not to include any arbitration provision in the Billing Agreement. Moreover, any ambiguities in interpreting the agreements should be construed against Etransmedia. *Syed v. Normel Construction Corp.*, 4 A.D.3d 303, 304 (N.Y. App. Div. 2004) (holding that to the extent that a contract is ambiguous, it should be construed against the drafter). Accordingly, to the extent that Etransmedia is asserting that there is any ambiguity in the agreements that would require arbitration, such ambiguity should be construed against Etransmedia and against requiring the parties to arbitrate any disputes arising under the Billing Agreement.

15

the plaintiff's claim is not subject to mandatory arbitration because the parties excluded it from the general arbitration clause).  There is no arbitration provision anywhere in the Billing Agreement, so there is no arbitration clause to interpret.  Its absence shows there was no intent of the parties to arbitrate disputes arising out of the Billing Agreement.  Moreover, the arbitration provision in the Services Agreement is not susceptible to an interpretation that it covers this dispute because NAPC's claims arise solely out of the Billing Agreement.

A.    **NAPC's Claims Are Not Arbitrable Because They Arise Solely Under The Billing Agreement**

In determining whether a claim is arbitrable, courts should focus on whether the factual allegations in the complaint touch matters covered by the arbitration provision.  *Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17, 36 (2d Cir. 2002); *Oneida Indian Nation*, 90 F.3d at 61.  In this case, a review of the factual allegations in NAPC's complaint clearly demonstrates that NAPC's claims do not touch matters covered by the Services Agreement's arbitration provision.  As the Supreme Court has stated, "nothing in the [FAA] authorizes a court to compel arbitration of *any issues*, or by any parties, *that are not already covered in the agreement*."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (emphasis added).  Accordingly, this Court does not have authority to compel arbitration of NAPC's claims because such claims are not covered by the Services Agreement.

In fact, it would be absurd to take the position that a dispute arising solely out of Etransmedia's breaches of the Billing Agreement would implicate the arbitration provision in a separate agreement.  Under New York law, there is a "heavy presumption that a deliberately prepared and executed written instrument [manifests] the true intention of the parties."  *Chimart Assoc. v Paul*, 66 N.Y.2d 570, 574 (N.Y. 1986).  Additionally, "[w]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four

corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *131 Heartland Blvd. Corp. v C.J. Jon Corp.*, 82 A.D.3d 1188, 1189 (N.Y. App. Div. 2011). Moreover, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *DT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209, 214 (N.Y. 2009). When faced with a clear and unambiguous contract, "[t]he court's role is limited to interpretation and enforcement of the terms agreed to by the parties, and the court may not rewrite the contract or impose additional terms which the parties failed to insert." *Id.*

In this case, the parties made the deliberate choice to include an arbitration provision in the Services Agreement and to not include any arbitration provision in the Billing Agreement. Etransmedia's argument that this dispute is subject to arbitration ignores the fact that the parties clearly intended that disputes arising out of the Billing Agreement would not be subject to arbitration. If the parties intended disputes arising out of the Billing Agreement to be subject to arbitration, the parties could have, and would have, included an arbitration provision in the contract. Moreover, the fact that the parties included an arbitration provision in the Services Agreement, but not in the Billing Agreement, is evidence that the parties made a deliberate choice to not submit their disputes under the Billing Agreement to arbitration. There is no basis for finding that a breach of the Billing Agreement should be governed by the dispute resolution provision of the Services Agreement. Nonetheless, it is exactly such an argument that Etransmedia is making in its Petition. In order for this Court to accept Etransmedia's argument that this dispute is subject to arbitration, this Court would have to ignore both the clear intent of the parties to not arbitrate issues arising out of the Billing Agreement and United States Supreme Court precedent regarding the fact that the FAA does not require arbitration where the parties

have not agreed to arbitrate. Accordingly, the Petition should be denied in its entirety and with prejudice.

**III.    THE SERVICES AGREEMENT'S ARBITRATION PROVISION DOES NOT PROVIDE A BASIS FOR COMPELLING ARBITRATION BECAUSE THE CLAIMS IN NAPC'S COMPLAINT ONLY IMPLICATE OBLIGATIONS UNDER THE BILLING AGREEMENT**

The arbitration provision contained in the Services Agreement does not provide a basis for granting the Petition. Etransmedia argues that because the Services Agreement contains an arbitration provision, this action is subject to arbitration. However, "[w]hen an arbitration clause in one agreement does not apply to claims arising from or related to a different agreement, [courts] have not required arbitration." *Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Investments, Inc.*, 533 F.3d 1342, 1346 (11th Cir. 2004); *see also Lewis v. New Jersey Sports Productions, Inc.*, No. 02 Civ. 6505, 2003 US Dist. Lexis 3483, at *8-10 (S.D.N.Y. March 12, 2003) (holding that an arbitration provision in an agreement was inapplicable to a cause of action arising out of a separate agreement between the parties because the plaintiff's claims were not dependent on the construction of the agreement containing the arbitration provision or of the parties' rights and obligations under that contract); *Mann v. N.A.S.A. International, Inc.*, No. 99 Civ. 11936, 2000 U.S. Dist. LEXIS 11922, at *18 (S.D.N.Y. August 21, 2000) (a "dispute should not be arbitrated where it arises out of a contract that is 'separate and distinct' from the contract containing the arbitration clause") (citing *Necchi S. P. A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 698 (2d Cir. 1965).

Moreover, it is appropriate to require the arbitration of a dispute that arises outside of the agreement with an arbitration provision "only when the arbitration clause applies to the dispute at issue." *Int'l Underwriters*, 533 F.3d at 1346. In *Int'l Underwriters*, the court held that despite the fact that there was an obvious relationship between the two contracts at issue, the arbitration

18

clause contained in an escrow agreement did not apply because the claims at issue were "not

related -- with at least some directness -- to the performance of duties specified in the escrow

agreement." *Id.* at 1349.  This case is squarely on point as the arbitration provision in the

Services Agreement does not apply to this dispute.

A.      **A Review of the Allegations in the Complaint Demonstrates that NAPC's**
        **Claims Do Not Relate to or Touch Upon the Services Agreement**

A review of the Complaint illustrates that NAPC's claims are not related to the arbitration

provision of the Services Agreement.  NAPC seeks damages and declaratory relief based solely

upon the Billing Agreement.  NAPC does not allege a breach of the Services Agreement, nor

does it seek any damages or declaratory relief based upon the Services Agreement.  In fact,

NAPC makes only a passing reference to the Services Agreement in the Complaint and

characterized it as "an entirely separate agreement" from the Billing Agreement.  Goldstein Aff.,

Ex. A at ¶ 25.  NAPC's reference to the Services Agreement was included for the sole purpose of

providing the court with a factual background of the dispute, which includes the July 2010

Notice that did touch upon the Services Agreement.  Goldstein Aff., Ex. A at ¶¶ 25-28.

However, the more recent June 2011 Notice and the Complaint dealt exclusively with the Billing

Agreement.  *See* Goldstein Aff., Ex. A at Ex. E.  In fact, NAPC specifically alleged and made

clear that Etransmedia did not seek termination of the Services Agreement.  Goldstein Aff., Ex.

A at ¶ 41; *see also* Goldstein Aff., Ex. At Ex. E, p. 3.[4]  Accordingly, it is clear that this dispute

does not relate with at least some directness to the Services Agreement.

---

[4] Despite the plain language of the June 2011 Notice and of the Complaint, the Declaration of
Vikram Agrawal includes the factually erroneous statements that NAPC "told Etransmedia that
they wanted to terminate both Agreements, alleging that Etransmedia had breached its
obligations under both Agreements" and that "[i]n its Complaint, NAPC explicitly alleges that
Etransmedia breached both the Services Agreement and the Billing Agreement." (Agrawal Decl.
at ¶¶ 21, 23).  These statements are intended to bolster Etransmedia's baseless arguments in
favor of the arbitration of NAPC's claims and are, at best, misleading.  A review of the June

**B.**     **Etransmedia's Arguments Amount to Defenses that Actually Relate to the Billing Agreement**

In an attempt to avoid properly litigating this dispute in Georgia, Etransmedia argues that NAPC's claims are arbitrable because NAPC's claims will require an analysis as to whether NAPC breached the Services Agreement.  Etransmedia argues that NAPC's claims that Etransmedia "failed to properly code insurance claims, improperly 'balance billed' Medicaid patients, failed to submit bills with the correct insurance information, and failed to respond to claim denials by insurance companies" somehow concern the Services Agreement because it "was pursuant to that agreement that the correct coding and insurance information was required to be entered into the system." Petition at pp. 15-17.[5] This self-serving assertion is simply wrong.

The sections of the Services Agreement that are referenced by Etransmedia demonstrate that it is the Billing Agreement that is actually and entirely at issue.  For example, Paragraph 11(a) of the Services Agreement merely provides that NAPC shall "save its financial and patient date on a daily basis." Goldstein Aff., Ex. C at p. 2.  Paragraph 11(h) of the Services Agreement – which is cited by Etransmedia for the expansive proposition that NAPC was responsible for

---

2011 Notice, of the emails between Dr. Brezina and Etransmedia (Brezina Aff. at ¶¶ 32-36; Compl. at Ex. E), and of the actual allegations of the Complaint all demonstrate that these statements by Mr. Agrawal are inaccurate.  Mr. Agrawal's statements are baseless and inaccurate.  Moreover, Mr. Agrawal's effort to manufacture "facts" demonstrates the illusory nature of Etransmedia's arguments and therefore underscores the fact that NAPC's claims are not subject to arbitration.

[5] Paragraphs 25-30 of the Declaration of Vikram Agrawal are intended to provide support for the assertion that Etransmedia's defenses to NAPC's claims will relate to the Services Agreement; however, the statements in these paragraphs are legal conclusions and cannot reasonably be supported by Mr. Agrawal's Declaration.  Moreover, these statements are belied by the plain language of the Billing Agreement, which demonstrates that each of the arguments that is referenced by Mr. Agrawal is available under the Billing Agreement without any reference to the Services Agreement.  In fact, in order to avoid this conclusion, Mr. Agrawal does not reference or even acknowledge NAPC's obligations as set forth in Section 2.1 of the Billing Agreement.

supplementing, updating and modifying the patient data necessary for Etransmedia's use in

performing its duties under the Billing Agreement – simply states that "[NAPC] shall be fully

responsible for uploading all content to [Etransmedia] and supplementing, modifying and

updating [Etransmedia]." *Id.* Nowhere in the Services Agreement is there any obligation or

requirement that NAPC enter the correct coding and insurance information into the system.[6] *See*

Goldstein Aff., Ex. C.

A review of the language of the Billing Agreement, including NAPC's explicit

obligations thereunder, plainly demonstrates that it is actually the Billing Agreement that is

implicated by Etransmedia's assertions regarding NAPC's obligation to submit accurate

information.  Section 2.1 of the Billing Agreement, under subparagraph (a) of "Client's

Responsibilities" provides that

> Daily Charge Slips, Remittances, Patient Information Forms, and
> miscellaneous correspondence will be completed [by NAPC] and forwarded
> to Etransmedia by the end of business of the day services rendered.  Diagnosis
> and Procedure codes will be specified by Client in writing or using the
> integrated EMR system."

Goldstein Aff., Ex. B at p. 3.  Moreover, subparagraph (d) of the "Client's Responsibilities"

portion of the Billing Agreement provides that NAPC agrees to "accept full responsibility for all

information provided by [NAPC] to Etransmedia and that [NAPC] agrees to hold Etransmedia

harmless in the event any errors occur due to inaccurate, incomplete or false information

---

[6] Similarly, Etransmedia's argument regarding the "key" employee is nothing more than a red herring, which is demonstrated the facts that the Billing Agreement did not require any "key" employee to be designated, that NAPC had extensive issues with Etransmedia and Etransmedia was breaching the Billing Agreement in myriad ways during Ms. Schronce's tenure as NAPC's Administrator (*See* Williamson Aff. at ¶ 23; Brezina Aff. at ¶ 20), that the July 2010 Notice evidencing Etransmedia's breaches of the Billing Agreement was sent during Ms. Schronce's tenure (Brezina Aff. at ¶¶ 14, 21), and that Susan Smith took over as NAPC's primary contact with Etransmedia after Ms. Schronce's departure (*Id.* at ¶ 21).

supplied by [NAPC] to Etransmedia." *Id.* Thus, even assuming that Etransmedia intends to raise

alleged failures of NAPC to submit accurate information as a defense, these assertions implicate

NAPC's obligations that are set forth in the Billing Agreement, not the Services Agreement.

Moreover, to the extent that Etransmedia argues that the parties' duties and obligations

under the Billing Agreement and Services Agreement are interconnected, this argument is

without merit. The Services Agreement is simply a licensing agreement for software and that

license is not at issue in this dispute. A review of the Billing Agreement and the Services

Agreement demonstrates that NAPC's duties to provide correct coding and insurance

information to Etransmedia arose out of the Billing Agreement, not the Services Agreement.

Therefore, even assuming NAPC breached such duties, which it expressly denies, those duties

relate entirely to the Billing Agreement and do not touch or relate to the Services Agreement.

Therefore, the arbitration provision of the Services Agreement is not implicated by this dispute

and the Court should deny Etransmedia's Petition.[7]

---

[7] Additionally, Etransmedia's argument that it did not breach the Billing Agreement by failing to provide sufficient staff and to exercise best efforts is belied by unambiguous New York law holding that parties to a contract have an implied duty of good faith and fair dealing. *See e.g.*, *Atlas Elevator Corp. v. United Elevator Group, Inc.*, 77 A.D.3d 859, 861, 910 N.Y.S. 2d 476, 478 (N.Y. App. Div. 2010) ("'Implicit in all contracts is a covenant of good faith and fair dealing . . . The implied covenant of good faith and fair dealing is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.") (quotations omitted); *see also 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-01 (N.Y. 2002). Accordingly, Etransmedia's argument in support of arbitrating NAPC's claims that Etransmedia failed to provide adequate staff or to exercise best efforts is legally unsupported and nothing more than a potential defense. Etransmedia has failed to present any actual connection to, or matter that actually touches upon, the Services Agreement. Etransmedia's arguments in support of arbitration do not withstand scrutiny and fail to provide any basis for compelling the arbitration of NAPC's claims.

## CONCLUSION

For the reasons that are stated in this Opposition to the Petition and in the Affidavits submitted in support hereof, Respondent NAPC respectfully requests that this Court either: i) deny Etransmedia's Petition in its entirely and with prejudice; or ii) stay the Petition until the Georgia court decides the issue of arbitrability.

Dated:      September 27, 2011                    Respectfully Submitted,

NEPHROLOGY ASSOCIATES, P.C.

By:  **s/ Philip A. Goldstein**
Philip A. Goldstein (Bar Number 514834)
Attorney for Respondent
McGuireWoods LLP
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105
T: (212) 548-2100
F: (212) 548-2150
E-Mail: pagoldstein@mcguirewoods.com

\33759411