UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ETRANSMEDIA TECHNOLOGY, INC.,

                              Petitioner,

     -v-                                          1:11-CV-1042

NEPHROLOGY ASSOCIATES, P.C.,

                              Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

PHILLIPS LYTLE LLP                        ROBERT L. LASH, ESQ.
Attorneys for Petitioner
3400 HSBC Center
Buffalo, NY  14203

MCGUIRE WOODS LLP                         PHILIP A. GOLDSTEIN, ESQ.
Attorneys for Respondent
1345 Avenue of the Americas
7th Floor
New York, NY  10105


DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I.  INTRODUCTION

     Etransmedia Technology, Inc. ("petitioner" or "Etransmedia") has filed a petition

pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 (2006) ("FAA"), seeking to compel

arbitration of claims asserted in a separate action filed in Georgia by respondent Nephrology

Associates, P.C. ("respondent" or "NAPC").  NAPC opposes and requests that the petition be

denied or stayed pending resolution of the arbitrability issue in Georgia.

## II. <u>BACKGROUND</u>

Etransmedia, a New York corporation, provides information technology services to medical practices.  NAPC, a Georgia corporation, provides care to patients with chronic kidney disease and related conditions.  In 2009 Etransmedia agreed to provide NAPC with an integrated computer system to maintain its electronic medical records.  Etransmedia also agreed to perform billing and claims processing services using data that NAPC entered into the computer system.

In late-December 2009 the parties executed two contracts:  (1) the Services Agreement pertaining to the licensing, management, and use of the computer system; and (2) the Agreement for Billing and Claims Processing Services and Business Associate Agreement ("the Billing Agreement") relating to the billing and claims processing services provided by Etransmedia.  Both documents contain a choice of law provision mandating that the contracts, and any disputes arising therefrom, are to be construed, interpreted, and governed by New York law.

### A. <u>The Services Agreement</u>

The Services Agreement consists of seventeen paragraphs and an attached fee schedule.  The first ten paragraphs define terms, establish a license permitting NAPC to use the electronic medical records software, and prohibit disclosure of confidential information.  Paragraph eleven outlines NAPC's responsibilities, which include the duty to "properly save its financial and patient data on a daily basis" and "identify and provide a 'key' individual . . . to serve as a liaison between [the parties]."  Pet. to Compel Arbitration, Ex. A, ¶ 11(a)–(b) ("Services Agreement").  Paragraphs twelve through sixteen regard data conversion, custom reporting, warranties, limitations of liability, and termination of the agreement.

Paragraph seventeen contains a merger clause, the choice of law clause, a provision regarding assignment, and an arbitration clause dictating that "[a]ny dispute or claim arising out of, or in connection with, this Agreement shall be finally settled by binding arbitration in Albany, New York, in accordance with the then-current rules and procedures of the American Arbitration Association by one (1) arbitrator appointed by the American Arbitration Association."  Id. ¶ 17(j).

### B.  The Billing Agreement

The Billing Agreement contains five articles and an appendix.  Article one concerns confidentiality and patient privacy.  The second article sets out the parties' responsibilities. Etransmedia is required to submit claims to third party carriers, perform billing services, provide a monthly "Aging report" to NAPC for charges billed, submit claims with NAPC's address listed as the remittance address, and send out patient statements immediately once patient accounts are updated.  Pet. to Compel Arbitration, Ex. B, ¶ 2.1 ("Billing Agreement").

NAPC is required "to provide Etransmedia with complete treatment and payment information for the processing and follow up of insurance and patient claims."  Id.  NAPC must also forward patient information forms to Etransmedia "by the end of business of the day services [are] rendered."  Id.  Through the Billing Agreement, NAPC accepts full responsibility for all information provided to petitioner, holds Etransmedia harmless for errors due to inaccurate, incomplete, or false information inputted by NAPC, and acknowledges that Etransmedia is not obligated to store or return any paper medical records.

The remaining articles in the Billing Agreement address limitation of liability, termination of the agreement, and miscellaneous provisions such as the choice of law and merger clauses.  The Billing Agreement does not contain an arbitration clause.

## C. **The Georgia Action**

Shortly after the parties entered into the agreements, NAPC's office manager, Wanda Schronce ("Schronce"), was designated as the liaison between the parties.  According to petitioner, any concerns with the computer system were addressed satisfactorily.  Schronce left NAPC, and Etransmedia asserts nobody replaced her as the designated liaison. Respondent maintains that the communications between the parties was always poor and that Schronce was replaced by another NAPC employee.  The relationship between the parties quickly began to deteriorate.

On July 27, 2010, NAPC sent a notice to Etransmedia alleging that it had breached both the Billing and Services Agreements, and expressing NAPC's intent to terminate both contracts ("the July 2010 notice").  On June 7, 2011, NAPC sent Etransmedia another notice alleging breach of the Billing Agreement and providing formal notice of NAPC's intent to terminate the Billing Agreement ("the June 2011 notice").  This notice specifically indicated that NAPC did not intend to terminate the Services Agreement.  NAPC asserts that Etransmedia refused to accept service of either notice.

On July 7, 2011, NAPC commenced an action in the Superior Court of Richmond County, Georgia ("the Georgia action").  In the Factual Background section of its complaint, NAPC alleges that Etransmedia breached both the Billing and Services Agreements .  See Pet. to Compel Arbitration, Ex. C, ¶¶ 26–28 ("Georgia Compl.").  However, in the actual breach of contract and declaratory relief causes of action, NAPC only discusses Etransmedia's alleged breach of the Billing Agreement.  Id. ¶¶ 58–64.  Specifically, NAPC claims that Etransmedia failed to provide an adequate number of properly trained billing personnel, made repeated billing errors, significantly decreased collections, provided

unsatisfactory responses to problems identified by NAPC, created substantial risks to NAPC's compliance with Medicare and Medicaid regulations, and refuses to return patient medical records.

On August 11, 2011, Etransmedia removed the Georgia action to the United States District Court for the Southern District of Georgia.  On August 31, 2011, Etransmedia filed this petition to compel arbitration in the Northern District of New York.  The following day it filed a motion in the Southern District of Georgia seeking dismissal of NAPC's complaint for improper venue or, in the alternative, transfer of venue to the Northern District of New York to be consolidated with this petition or a stay of the proceedings pending the outcome of this petition.  On September 9, 2011, NAPC filed a motion in the Southern District of Georgia seeking to remand the Georgia action to the Superior Court of Richmond County based on the untimeliness of Etransmedia's removal.  The district court granted NAPC's motion to stay briefing on Etransmedia's motion to dismiss, pending a decision on the motion to remand.

## III.  DISCUSSION

NAPC argues that the petition must be denied because:  (1) Etransmedia neither demanded arbitration nor provided written notice prior to filing this petition; (2) the issue of arbitrability is pending before the Southern District of Georgia in Etransmedia's motion to dismiss, posing a risk of inconsistent rulings; and (3) the issues presented in the Georgia action concern only the Billing Agreement, which does not contain an arbitration clause.[1]

---

[1]  NAPC also alleges that Etransmedia improperly brought this petition in the Northern District of New York and, thereby, has engaged in impermissible forum shopping.  To the extent that this is a jurisdictional challenge, such an argument is unpersuasive.  A party wishing to enforce an arbitration clause "may petition any United States district court" which would have subject matter jurisdiction of the action for an order compelling the parties to proceed to arbitration.  9 U.S.C. § 4. It is undisputed that there is complete diversity between the parties and that the amount in controversy exceeds $75,000.  Thus, diversity jurisdiction exists.

(continued...)

### A.  Motion to Compel Arbitration—Legal Standard

When considering a motion to compel arbitration brought under the FAA, "the court applies a standard similar to that applicable for summary judgment."  Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).  The entry of summary judgment is warranted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).

The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. A court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party.  Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

### B.  Accrual of Action to Compel Arbitration

NAPC maintains that the petition must be denied because Etransmedia failed to make a formal demand for arbitration and did not provide NAPC with written notice prior to filing this petition.  NAPC does not cite any authority to support its assertion that these actions require denial of a petition to compel arbitration.  Importantly, the arbitration clause in the

---

[1](...continued)

See 28 U.S.C. § 1332(a), (c).  Moreover, because the Services Agreement calls for arbitration to proceed in Albany, Etransmedia is required to bring the petition to compel arbitration in the Northern District of New York. See J.P. Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp., 712 F. Supp. 2d 70, 82–83 (S.D.N.Y. 2010) (agreeing with "the majority of circuits" which hold that if a contract designates a forum for the arbitration, the petition to compel arbitration must be brought before a court in that jurisdiction).  Finally, parties that specifically include a provision for arbitration in New York "must be deemed to have consented to the jurisdiction of the courts of New York to enforce the subject contract."  Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co., 408 F.2d 606, 613 (2d Cir. 1969).

Services Agreement does not require a party to make a formal demand or provide written notice before seeking an order compelling arbitration.

An action to compel arbitration instead accrues when the respondent has failed, neglected, or refused to arbitrate despite a valid agreement to arbitrate the disputed matter.[2] 9 U.S.C. § 4; LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004).  A party manifests its refusal to arbitrate the subject matter of a dispute by failing to comply with an arbitration demand or commencing litigation.  See LAIF X, 390 F.3d at 198; Jacobs v. USA Track & Field, 374 F.3d 85, 89 (2d Cir. 2004).  Absent a provision in the contract between the parties, once an action to compel accrues there is no requirement that a party provide written demand or notice of the action prior to filing a petition to compel.[3]

Assuming, arguendo, that the claims asserted in the Georgia action are subject to the arbitration clause in the Services Agreement, NAPC manifested its refusal to arbitrate those claims by filing that action.  Thus, Etransmedia's action to compel arbitration accrued when NAPC commenced the Georgia action on July 7, 2011.  As the Services Agreement is silent on demand and notice, Etransmedia was under no obligation to formally demand arbitration or provide written notice of its action prior to filing this petition.

C.  **Risk of Inconsistent Rulings**

NAPC next argues that the petition must be denied because the issue of arbitrability is

_____

[2]  The parties do not dispute the validity of the arbitration clause in the Services Agreement.  The dispute instead focuses on whether the subject matter of the Georgia action concerns the Services Agreement.  That issue is discussed below.

[3]  Respondent correctly notes that the FAA contains the following provision:  "Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure."  9 U.S.C. § 4.  However, this language does not require five days' notice prior to filing a petition to compel.  It instead requires the petitioner to serve notice on the respondent within five days of filing the petition in a district court.

pending before the Southern District of Georgia, thus posing a risk of inconsistent rulings.

If a court of competent jurisdiction has already decided either the arbitrability or merits of the claims in dispute, a separate court is precluded from ruling on an independent petition to compel arbitration of those claims.  See Hatzlachh Supply, Inc. v. Moishe's Elecs. Inc., 848 F. Supp. 25, 28 (S.D.N.Y. 1994) (res judicata bars a petition to compel arbitration if the merits of a claim have already been adjudicated and are thus entitled to full faith and credit), aff'd, 50 F.3d 4 (2d Cir. 1995) (unpublished table decision).  However, that is not the case here.

As noted above, the Southern District of Georgia is arguably not a court of competent jurisdiction to decide the issue of arbitrability because the parties have designated Albany, New York, as the forum for arbitration proceedings.  See J.P. Morgan Sec. Inc., 712 F. Supp. 2d at 82–83.  Regardless, according to NAPC, the issue of arbitrability is only presented in Etransmedia's motion to dismiss.[4]  It is undisputed that briefing on the motion to dismiss has been stayed pending decision on NAPC's motion to remand back to state court.  Thus, at this juncture, the issue of arbitrability will not be decided by the Southern District of Georgia. Further, there is nothing in the record indicating that any Georgia court, federal or state, has yet ruled on the merits of the claims in the Georgia action.  In fact, the parties have not provided any update whatsoever on the status of the Georgia action.  In the event this petition is granted, any pending action in Georgia regarding the merits of the claims may be stayed upon application of one of the parties pursuant to 9 U.S.C. § 3.

---

[4]  Indeed, Etransmedia has made clear its belief that only a court in the Northern District of New York has jurisdiction to decide its petition to compel arbitration.  It therefore has not filed any other petitions and, through its motion to dismiss in the Southern District of Georgia, seeks to have the Georgia action consolidated with this petition.

Accordingly, there is no risk of inconsistent rulings to preclude decision on the petition to compel arbitration.

**D. <u>Merits of the Petition to Compel Arbitration</u>**

The parties dispute whether the claims asserted in the Georgia action implicate the Services Agreement and, thereby, are subject to arbitration.[5]  NAPC maintains that the Georgia action is based solely on Etransmedia's alleged breach of the Billing Agreement, which does not contain an arbitration clause.  Etransmedia argues that its obligations under the Billing Agreement are dependent on the data and communication NAPC must provide pursuant to the Services Agreement, and, therefore, the allegations necessarily concern the terms of the Services Agreement.

The FAA establishes that arbitration clauses in contracts are "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Courts have the authority to compel arbitration pursuant to a valid arbitration clause.  <u>Id</u>. § 4.  It is well-established that "the Federal Arbitration Act . . . expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.</u>, 252 F.3d 218, 223 (2d Cir. 2001) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941 (1983)).  Although policy favors arbitration, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>Id</u>. at 224 (internal quotation marks omitted).

To determine whether a dispute comes within the scope of an arbitration clause, it must

---

[5]  Again, it is undisputed that the arbitration clause in the Services Agreement is valid and binding.

first be determined whether the clause is "broad or narrow." Id.  In short, a court must decide whether "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." Id. at 225.

If the clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id. at 224 (internal quotation marks omitted).  Indeed, by drafting a broad arbitration clause, the parties express their intent to have all matters that "touch" the agreement arbitrated.  Id. at 225.

If the clause is narrow, arbitration will only be ordered if "the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Id. at 224 (internal quotation marks omitted).  A collateral matter generally falls outside the scope of a narrow arbitration clause.  Id.

### 1.  **The Arbitration Clause is Broad**

NAPC does not seriously dispute Etransmedia's assertion that the arbitration clause in the Services Agreement is broad.  The following constitutes the entire language of the clause:

> Any dispute or claim arising out of, or in connection with, this Agreement shall be finally settled by binding arbitration in Albany, New York, in accordance with the then-current rules and procedures of the American Arbitration Association by one (1) arbitrator appointed by the American Arbitration Association. The arbitrator shall apply the law of the State of New York, without reference to rules of conflict of law or statutory rules of arbitration, to the merits of any dispute or claim.  Judgment on the award

rendered by the arbitrator may be entered in any court of competent
jurisdiction.

Services Agreement ¶ 17(j).  This language evidences the parties' intent for arbitration to

serve as the primary recourse for any dispute, without exception, that touches the Services

Agreement.  Arbitration clauses with almost identical language have consistently been

deemed "broad" clauses.  See, e.g., Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d

Cir. 1998) (a clause that subjects to arbitration "[a]ny dispute, controversy or claim arising

under or in connection with" the agreement "represents the prototypical broad arbitration

provision"); Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995)

("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or

relating to th[e] agreement,' is the paradigm of a broad clause.").

Thus, the arbitration clause in the Services Agreement is broad, and the presumption of

arbitrability applies.

## 2.  **The Claims Touch Matters Covered by the Services Agreement**

NAPC maintains that the claims asserted in the Georgia action implicate only the Billing

Agreement and do not touch the terms of the Services Agreement.  Etransmedia argues that

there is a symbiotic relationship between these two agreements, and the claims asserted by

NAPC necessarily touch the terms of the Services Agreement.

Any legal claims that "touch matters" covered by an agreement containing a broad

arbitration clause "must be arbitrated."  Paramedics Electromedicina Comercial, Ltda. v. GE

Med. Sys. Info. Techs., Inc., 369 F.3d 645, 654 (2d Cir. 2004).  This includes claims that

involve collateral matters implicating the parties' rights and obligations under the agreement

containing the broad arbitration clause.  Collins & Aikman Prods. Co., 58 F.3d at 23.  In

deciding whether a claim touches matters covered by an agreement, a court must "focus on the allegations in the complaint rather than the legal causes of action asserted." Id. at 20–21 (internal quotation marks omitted).  The presumption of arbitrability is only overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 19. (internal quotation marks omitted). Finally, any doubts as to whether a broad arbitration clause covers a dispute "should be resolved in favor of coverage."  Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999) (internal quotation marks omitted).

In the Georgia action, NAPC alleges that Etransmedia failed to provide an adequate number of properly trained billing personnel, made repeated billing errors, caused a significant decrease in collections, created substantial risks to NAPC's compliance with Medicare and Medicaid regulations, showed a complete disregard for the concerns expressed by NAPC, failed to send out patient statements and provide monthly aging reports in a timely fashion, and refuses to return patient medical records.  These claims, and related claims made elsewhere in the Georgia action, clearly implicate the Billing Agreement.  However, they also touch matters that fall within the purview of the Services Agreement.

Etransmedia's ability to provide prompt and accurate billing services under the Billing Agreement is connected to NAPC's obligation to "properly save its financial and patient data on a daily basis" pursuant to the Services Agreement.  Services Agreement ¶ 11(a).  In fact, Etransmedia has suggested that its primary defense to the breach of contract claim is that its allegedly incompetent billing and collections services are a result of NAPC's failure to input accurate and updated data into the computer system.  In addition, the Georgia complaint alleges "difficulties in communicating with Etransmedia" and a "complete disregard" for

NAPC's concerns.  Georgia Compl. ¶¶ 1, 22.  These allegations arguably touch the provision in the Services Agreement calling for a designated liaison between the parties.[6]

Moreover, although the June 2011 notice only alleged a breach of the Billing Agreement and noted that NAPC did not intend to terminate the Services Agreement, the July 2010 notice alleged a breach of both agreements and expressed NAPC's intent to terminate both contracts.  NAPC's complaint in the Georgia action alleges breach of both agreements and incorporates by reference the July 2010 notice.  See Georgia Compl. ¶¶ 26–28.

The July 2010 notice includes a non-exhaustive list of Etransmedia's alleged "shortcomings," most of which are re-alleged in the Georgia action.  Brezina Aff., Ex. A, 1.  However, the July 2010 notice implies that these shortcomings are the result of Etransmedia's breach of both agreements, not just the Billing Agreement.  This notice also indicates that there are numerous problems with the computer system that Etransmedia provided and manages pursuant to the Services Agreement.  The competency and accessibility of the computer system impacts the ability of the parties to input and extract data needed to fulfill their respective obligations under the Billing Agreement.  Thus, the terms of the Services Agreement, and the parties obligations thereunder, will become a central issue in the underlying dispute.  Further, the July 2010 notice explicitly alleges that Etransmedia's failure to provide "custom reports" is a breach of paragraph 16(d) of the Services Agreement.  Id. at 3.

In sum, it cannot be said with positive assurance that the allegations asserted in the

---

[6]  Even viewing the facts in the light most favorable to NAPC—to wit, Schronce was replaced by another employee—the issue of communication between the parties remains important to the underlying claims.

Georgia action, and those incorporated by reference therein, fall outside the purview of the broad arbitration clause in the Services Agreement.  Therefore, these claims touch matters covered by and obligations arising from the Services Agreement.  As the parties agreed to arbitrate any disputes arising out of or in connection with the Services Agreement, it is appropriate to arbitrate these claims.  Accordingly, Etransmedia's petition to compel arbitration of the claims asserted in the Georgia action will be granted.

## IV.  CONCLUSION

Although NAPC filed a complaint in Georgia, there is no indication that any court of competent jurisdiction has ruled on the issue of arbitrability or the merits of NAPC's claims. As the claims asserted by NAPC in the Georgia action touch matters covered by the Services Agreement, they are subject to the broad arbitration clause contained in that agreement. This is consistent with the policy—evidenced in the FAA—favoring the enforcement of arbitration agreements.

Therefore, it is

ORDERED that

1.  Petitioner Etransmedia Technology, Inc.'s petition to compel arbitration is GRANTED; and

2.  The parties are directed to proceed to arbitration in Albany, New York, in accordance with the arbitration clause in the Services Agreement.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  August 16, 2012
          Utica, New York.